UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-291-GWU

ANGELA RAINS,                                                                  PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Angela Rains, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative changes of the cervical, thoracic, and lumbar spine, diabetes mellitus, a depressive disorder, and an anxiety disorder. (Tr. 27). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and therefore was not entitled to benefits. (Tr. 30-4). The Appeals Council declined to review, and this action followed.

At the most recent administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 27, with a high school education, and no transferable work skills, could perform any jobs if she were limited to "light" level exertion with no uninterrupted sitting or standing in excess of 20 minutes, and also had the following non-exertional restrictions. She: (1) could not climb ladders, ropes, or scaffolds, and could have no exposure to unprotected heights or hazardous equipment; (2) could occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; (3) could only occasionally reach overhead with the upper or lower extremities; (4) could have

7

no concentrated exposure to vibration; and (5) was limited to work involving only simple, one- or two-step instructions which was not highly stressful (including no production rate or quota work), with no public contact and only occasional contact with coworkers and supervisors. (Tr. 81-2).[1] The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 82-3).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to herniated discs in her back, club feet, and diabetes. (Tr. 131). At the most recent administrative hearing, she testified of an inability to work because of constant pain in her back and neck, with radiation of

---

[1] In a prior decision dated September 15, 2006, the same ALJ had limited the plaintiff to "sedentary" level exertion with a sit/stand option and a need to avoid the operation of motor vehicles, among other items. (Tr. 54). On March 19, 2008, the Commissioner's Appeals Council remanded this decision, citing several deficiencies with the analysis of the plaintiff's mental functioning, and with the vocational expert testimony. The ALJ was directed to obtain additional evidence concerning the claimant's diabetes, degenerative changes of the back, and depression, give better support to his determination of the claimant's maximum residual functional capacity, and if necessary obtain supplemental evidence from a VE. (Tr. 36-7). The plaintiff briefly argues that the ALJ failed to follow the directions of the Appeals Council, and improperly determined that with the same or smaller evidence that her physical capacities had improved. Since the first administrative decision was vacated by the Appeals Council, it did not become administratively final. This court's review is limited only to final decisions of the Commissioner.

pain to the left leg. (Tr. 68-9). She also had anxiety and depression, did not like going into public places, and would have panic attacks. (T. 74-6). Additionally, her blood sugar was high despite the use of diabetes medication. (Tr. 73).

Physical functional restrictions were assigned by Dr. William Pratt, a treating family physician, who opined late in 2005 that the plaintiff would be limited to lifting 20 pounds occasionally and 10 pounds frequently, with standing or walking limited to less than two hours in an eight-hour day and sitting to six hours. She could only stoop or crouch five percent of the day and her leg needed to be elevated while seated at least ten inches 90 percent of the time. His diagnosis was lumbar strain, diabetes mellitus, depression, and herniated discs, and he noted objective findings of back pain with radiation down the left leg to the calf. He also felt that emotional factors contributed to her symptoms and functional limitation. (Tr. 489-92).

The ALJ declined to accept all of Dr. Pratt's restrictions. First, he noted that Dr. Pratt had indicated at one point that the plaintiff could not stand for more than 5 minutes continuously, but she testified that she could stand for 25 minutes. (Tr. 31, 71, 489). Second, the ALJ found that Dr. Pratt had provided "no clinical support for his extremely limited capacity assessment, and his office notes from the same month as the assessment showed that the plaintiff could move easily, had no tenderness, and a full lumbar range of motion." (Tr. 31, 485). The court notes that, in addition, Dr. Pratt's subsequent office notes reflect treatment primarily for a

9

variety of transient conditions such as an abscessed tooth, a cystic lesion on the right wrist, a pectoralis major muscle strain, and bronchitis. (Tr. 537-8). While the plaintiff did have MRI reports showing minimal to mild disc bulges at the cervical and lumbar areas (Tr. 400, 402), the ALJ could reasonably have concluded that objective physical findings did not show sufficient limitations to support Dr. Pratt's opinion. Furthermore, although the plaintiff had CT scans showing that her spinal condition may have worsened following a June, 2008 motor vehicle accident (Tr. 641-7), her new family physician, Dr. Emanuel Yumang, noted that approximately three weeks after the accident she had a full range of motion of the cervical and lumbar spine and no neurological deficits. (Tr. 668-9). The ALJ's physical functional findings are consistent with state agency sources who reviewed at least a portion of the record. (Tr. 456-62).

In dealing with the psychological evidence, the ALJ overlooked two potentially significant pieces of evidence.

First, at a consultative examination by Dr. Kenneth Starkey in September, 2005, the psychologist diagnosed a depressive disorder and a personality disorder and noted that her response to the normal stressors of a day-to-day work environment were likely to be marked by mild to moderate difficulty managing stressors at the present time. (Tr. 330). He stated that with treatment "including weekly psychotherapy," the plaintiff might be rendered psychologically appropriate

for vocational training or placement in six months, but without such treatment "her prognosis for being able to sustain gainful public employment at any future time remains guarded." (Tr. 331). This can only be interpreted as a belief that the plaintiff was not capable of working. State agency psychological reviewers, while stating that they gave Dr. Starkey's opinion great weight, provided mental limitations that indicated the plaintiff would have limitations, but was not precluded from working. (Tr. 436-7, 464-6).

Subsequently, the plaintiff began treatment at Cumberland River Comprehensive Care Center (CCC) where she was seen by a licensed psychological associate, Machelle Decker-Callahan, and by a registered nurse-practitioner, Roberta Tackett, who specialized in psychiatry. The ALJ noted that Decker-Callahan completed a "mental impairment questionnaire" in January, 2006, listing a number of significant restrictions including poor or no ability to make many work-related adjustments. (Tr. 405-11). The ALJ discounted these restrictions because of Decker-Callahan's contemporaneous assignment of a Global Assessment of Functioning (GAF) score of 55 to 60, indicative of no more than moderate mental limitations, and her statement that it was too early to predict how the claimant would respond to medication. (Tr. 31). Furthermore, he noted that subsequent treatment notes appeared to indicate improvement in her condition. (Tr. 32). However, it appears that Roberta Tackett, who was seeing the plaintiff

11

regularly and attempting to prescribe psychiatric medications that would not cause unacceptable side effects, countersigned the same assessment form on August 17, 2006. (Tr. 527-33). As with Dr. Starkey's opinion that the plaintiff would not be able to work without six months of weekly psychotherapy, this factor does not appear to have been considered. Although a registered nurse-practitioner is not considered an acceptable medical source under the Commissioner's regulations, 20 C.F.R. § 416.913, they are considered "other sources" whose opinions can be considered and whom the adjudicator should generally provide an explanation for the weight given to their opinions. Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at 5.

The decision will be remanded for further consideration.

This the 14th day of July, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**